**REAL GOOD TOYS, INC., Plaintiff,**

v.

**XL MACHINE LTD., Ames Department Stores, Inc., Target Corporation, Shopko Stores, Inc., Meijer, Inc., KB Toys, Inc., and Larry Bernstein, Defendants.**

No. Civ. 2:01–CV–83.

United States District Court, D. Vermont.

Aug. 3, 2001.

Stephen G. Norten, Paul, Frank & Collins, Burlington, VT, for plaintiff.

Peter Fuller Young, Miller, Eggleston & Cramer, Burlington, VT, Nicole Engisch, Amy R. Brosnahan, Leonard, Street and Deinard, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

SESSIONS, District Judge.

Plaintiff Real Good Toys, Inc. ("RGT") brings this action for copyright infringement, unfair competition, and false advertising, under 17 U.S.C. §§ 106, 501, and 15 U.S.C. § 1125(a). Subject matter jurisdiction is alleged under 28 U.S.C. §§ 1338 and 1331. Defendants XL Machine Ltd. ("XL"), Meijer, Inc., and Larry Bernstein have moved to dismiss for lack of personal jurisdiction and/or improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion to dismiss is denied with respect to XL and Bernstein. Defendant Meijer's motion is granted as unopposed. The Defendants' request for an evidentiary hearing is denied.[1]

### I. Factual Background

The following facts are taken as true for purposes of this motion. RGT is a Vermont corporation with its principal place of business in Barre, Vermont, that manufactures and sells dollhouse kits in a range of different models throughout the United States and Canada. XL is a Hong Kong, China Limited Liability Corporation, with an office in Minnesota. The company's president, Neil Levine, resides in Minnesota. Bernstein, a resident of California, is XL's chief executive officer. XL places its Minnesota address on the packaging of its dollhouse kits. XL's products, which include dollhouse kits, are sold in the United States. XL does not do business in Ver-

---

**1.** Because the parties' submissions have ably set forth the relevant facts and law, oral argument on the motion is unnecessary. *See* LR 7.1(a)(7).

mont nor does it directly advertise or sell its products in the state.

In late 1996 RGT developed the Alison Jr., a Victorian-style dollhouse featuring a four-story tower, a Mansard roof, a second-story balcony, extensive "gingerbread," and a clapboard pattern milled into its walls. It began selling the Alison Jr. dollhouse in 1997, and obtained a Certificate of Registration from the United States Copyright Office on December 12, 2000. The company markets its products, including the Alison Jr., via trade shows, catalogs, and the Internet. A large picture of the Alison Jr. appears on RGT's website. The dollhouse is sold in boxes with distinctive trade dress, which state prominently that the product is "Made in Vermont," and feature a graphic depiction of the state. RGT's Barre, Vermont address appears in four places on the carton, as well as on the instructions, the catalogue, and the price list that accompanies the dollhouse kit.

Prior to the Christmas season 2000, the Alison Jr. was one of RGT's biggest sellers. However, around October of that year the company began receiving complaints from customers who believed that the kit was being sold at sharp discounts in certain chain stores, including Ames department stores. RGT's president, James Abrams, went to an Ames department store to investigate, and found a "Petite Dreams" dollhouse kit in a box decorated in a style similar to the Alison Jr.'s (featuring a young girl gazing admiringly at her dollhouse). Upon inspection, Abrams discovered that the dollhouse was virtually a mirror image of the Alison Jr., strikingly similar in its design features, although of inferior quality. At least 88 Petite Dreams dollhouse kits have been sold in Vermont.

Bernstein designed the Petite Dreams dollhouse between April and June of 1999.

He denies that he copied the Alison Jr. dollhouse and any knowledge of the dollhouse, RGT or RGT's location.

RGT alleges that Bernstein and XL knowingly and willfully infringed upon RGT's copyright on the Alison Jr. design by copying it and manufacturing a knockoff. It alleges that Bernstein and XL infringed upon RGT's trade dress by copying its essential elements for its own packaging with the intent of causing consumer confusion. RGT further contends that XL entered into distribution agreements, which included indemnity clauses, with major retailers as part of a national marketing scheme in order to promote the widest distribution possible for the Petite Dreams dollhouse. It claims that XL engaged in this conduct knowing that RGT's place of business was in Vermont and that the brunt of the injury caused by the infringement would be felt in Vermont.

## II. Discussion

### A. Personal Jurisdiction

The plaintiff bears the burden of proving the defendant's amenability to suit in this forum. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). The nature of that burden "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Prior to discovery, a plaintiff faced with a challenge to jurisdiction need make only a prima facie showing that jurisdiction exists. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). That showing may be made through a plaintiff's own affidavits and supporting materials, "notwithstanding a controverting presentation by the moving party." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). "In the absence of an evidentiary hearing

on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz*, 763 F.2d at 57. As the Motion to Dismiss was filed pre-discovery, the Court will rule on the basis of the jurisdictional allegations in RGT's submissions.

■ In a suit brought pursuant to a federal statute, state personal jurisdiction rules apply if the statute does not specifically provide for national service of process. *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)); *see also* Fed.R.Civ.P. 4(k)(1)(A). RGT contends that XL and Bernstein are amenable to suit under Vermont's long arm statute.

■ The Vermont long arm statute, Vt. Stat.Ann. tit. 12 4F 913(b) (1971), provides:

> Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

Vt.Stat.Ann. tit. 12 § 913(b). The Vermont Supreme Court has interpreted this language to permit the assertion of jurisdiction to "the full extent allowed under the Due Process Clause." *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382, 1385 (1990). Thus, this Court must determine whether the Due Process Clause permits the exercise of personal jurisdiction over XL and Bernstein.

■ Due process protects a nonresident defendant from becoming subject to the binding judgments of a forum with which it has had no significant contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In order for the exercise of personal jurisdiction to comport with due process, two inquiries must be undertaken and satisfied: "minimum contacts" and "reasonableness." *Metropolitan Life*, 84 F.3d at 568.

■ Defendants have "minimum contacts" with the forum state for the purposes of specific jurisdiction[2] if the claim arises directly out of their contacts there and if they have "purposefully availed" themselves of the privilege of doing business in the forum. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Under *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), intentional actions "directed at the plaintiff and having sufficient impact upon it in the forum" may give rise to jurisdiction. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998). Jurisdiction is appropriate when the state has been the "focal point both of the [alleged tort] and of the harm suffered," the defendants knew the plaintiff would suffer the "brunt" of the harm there, and they "expressly aimed" their actions at the state. *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1029 (2d Cir.1997). *See also LiButti v. United States*, 178 F.3d 114, 123 (2d Cir.1999) (minimum contacts exist when defendant "purposefully directed" harmful effects of its activities at forum state).

■ Given that its allegations are assumed to be true at this stage of the litigation, RGT has made its prima facie showing that XL and Bernstein's contacts with Vermont are sufficient to subject it to

---

**2.** RGT does not claim that it can establish general jurisdiction.

the Court's jurisdiction. Where, as alleged here, XL and Bernstein have knowingly and willfully infringed upon the copyright and trade dress of a Vermont corporation, knowing that the "brunt of the injury" would be sustained in Vermont, *Calder's* "effects test" has been met, at least preliminarily. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998) (in trademark dilution suit jurisdiction based on intentional action expressly aimed at forum state, brunt of harm suffered in forum state, defendant knew harm would be suffered in forum state); *Dakota Ind., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391 (8th Cir.1991) (in trademark infringement suit, personal jurisdiction assumed over nonresident defendants whose acts were performed for purpose of having consequences felt in the forum state).

Assuming jurisdiction over a defendant must also be reasonable under a case's particular circumstances, so that forcing participation in the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Courts may "evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

At this early stage of the litigation, the factors weigh in favor of jurisdiction. Although appearing in Vermont will impose a burden on Defendants, the remaining factors support the fairness of imposing jurisdiction in this case. In particular, Vermont has an important interest in protecting its citizens' intellectual property rights and business interests. RGT, a small, family-owned corporation, has a strong interest in obtaining relief in its home state.

RGT has made a prima facie showing of facts supporting the assertion of personal jurisdiction over XL and Bernstein, such that maintaining the suit against them "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Of course, if XL and Bernstein dispute the facts supporting jurisdiction in a Rule 56 motion or at trial, RGT will have to prove the existence of jurisdiction by a preponderance of the evidence. *Ball,* 902 F.2d at 197.

### B. Venue

Copyright suits "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). A corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction" under 28 U.S.C. § 1391(c).

■ It is generally held that assessment of venue merges into the personal jurisdiction analysis, and thus venue is proper anywhere there is personal jurisdiction.[3] *See North American Philips Corp. v. Am. Vending Sales, Inc.,* 35 F.3d 1576, 1577 n. 1 (Fed.Cir.1994) (venue issue is subsumed in personal jurisdiction issue); *Editorial*

---

**3.** A District of Vermont case holding that venue in a copyright suit was not proper in Vermont, although personal jurisdiction existed, involved a sole proprietorship defendant. The ruling was limited to the "resides" language, and did not discuss whether the defendant could be "found" in the forum. *Blue Compass Corp. v. Polish Masters of America,* 777 F.Supp. 4 (D.Vt.1991).

*Musical Latino Americana v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 66 (S.D.N.Y. 1993) (well-established that a defendant "may be found" in any district in which he is subject to personal jurisdiction; thus, venue and jurisdiction are coextensive); *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207 (S.D.N.Y.1995) (defendant "may be found" wherever that person is amenable to personal jurisdiction). Accordingly, venue is proper in Vermont.

### III. Conclusion

The Motion to Dismiss of Defendants' XL Machine, LTD., Meijer, Inc., and Larry Bernstein (Doc. 3) is GRANTED IN PART and DENIED IN PART. The motion is granted as to Meijer; the motion is denied as to XL and Bernstein. Defendants' request for an evidentiary hearing is DENIED.