LEXMARK INTERNATIONAL, INC., Plaintiff,

v.

LASERLAND, INC., Defendant.

No. CIV.A.03–312–JMH.

United States District Court,
E.D. Kentucky,
Lexington.

Jan. 15, 2004.

Binal J. Patel, Banner & Witcoff, Ltd., Chicago, IL, Charles E. Shivel, Jr., Stoll, Keenon & Park, LLP, Lexington, KY, Christopher J. Renk, Banner & Witcoff, Ltd., Eric S. Maurer, Banner & Witcoff, Ltd., Chicago, IL, Steven Brian Loy, Stoll, Keenon & Park, LLP, Lexington, KY, Timothy C. Meece, Banner & Witcoff, Ltd., Chicago, IL, for Lexmark International, Inc., Plaintiff.

Andrew D. DeSimone, Sturgill, Turner & Barker, Douglas L. McSwain, Sturgill, Turner, Barker & Maloney, PLLC, Lexington, KY, for Laserland, Inc., Defendant.

## ORDER

HOOD, District Judge.

This matter is before the Court on Defendant's motion to dismiss [Record No. 12]. Plaintiff has filed a brief in response [Record No. 15] to which Defendant has replied [Record No. 17]. This matter is now ripe for decision.

## I. BACKGROUND

Defendant Laserland is a small manufacturer of parts for printer toner cartridges. Laserland is located in Michigan and claims to lack a presence in Kentucky sufficient for establishing personal jurisdiction before this Court. Additionally, Laserland believes that the current venue is improper.

Plaintiff Lexmark has brought this patent infringement case against Laserland. Plaintiff claims that one of Laserland's products, known as the OpWheel, infringes upon patents owned by Lexmark. Apparently, the OpWheel is used to convert standard-yield toner cartridges for Lexmark's Optra S laser printer into high-yield toner cartridges. Lexmark believes that jurisdiction in Kentucky is proper since Laserland has conducted business with Kentucky residents and maintains an interactive website that broadcasts into Kentucky and continuously advertises Laserland's products.[1] Additionally, Laserland has sold and shipped the infringing OpWheel product to Kentucky residents.

Laserland claims that its total OpWheels sales in Kentucky consists of two sales, one in 1999 and one in 2003. The 2003 Kentucky sale of the OpWheel product was to the Plaintiff's intellectual property attorney, John Pezdek, which Laserland believes is an attempt by Plaintiff to fabri-

---

1. Laserland's website, *www.laserlandus.com,* also includes photos of the OpWheel products with an animated visual tutorial on how to convert an Optra S standard-yield cartridge into a high-yield cartridge.

cate jurisdiction. Laserland states that its total profits on its Kentucky OpWheels sales, excluding fixed costs, is less than $1.00. The company's total profits on U.S. sales of this product to date, excluding fixed costs, is allegedly less than $1,000.00. Laserland also notes that Lexmark neither gave notice nor made a demand upon Laserland to stop its manufacturing or selling of the OpWheels products prior to filing this lawsuit.

## II. DISCUSSION

### A. Personal Jurisdiction

■■■ In a patent infringement suit, Federal Circuit law governs the issue of personal jurisdiction. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995). Since there has not been an evidentiary hearing, the plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed.Cir.2002); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002). The issue of personal jurisdiction involves two inquiries: (1) whether the forum state's long-arm statute permits the assertion of jurisdiction and (2) whether the assertion of personal jurisdiction violates federal due process. *Akro* at 1544.

■■■ Kentucky's long-arm statute (KRS 454.210) has been consistently interpreted as reaching the full limits of constitutional due process. *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky.2002). Therefore, the two-step inquiry employed by the Federal Circuit collapses into a single inquiry of whether jurisdiction violates federal due process. *Akro* at 1544. The Federal Circuit and the Sixth Circuit apply the same

traditional three-part test in making this due process determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machinery Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Akro* at 1545–46.[2]

### 1. Purposeful Availment

The first prong of the traditional due process inquiry requires Laserland to purposefully avail itself of the privilege of conducting business in Kentucky or of causing consequences in Kentucky. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), *quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Defendant Laserland claims that its business is the only factor that could constitute purposeful availment. Laserland asserts that it has no office in Kentucky, no registered agent in Kentucky, and no license to transact business in Kentucky. Further, Laserland claims that it has never solicited business in Kentucky nor advertised in Kentucky. The only link Laserland has to Kentucky is the sale of its products over the Internet to Kentucky

**2.** Defendant asserts in its motion to dismiss that Plaintiff lacks both general and specific personal jurisdiction. Plaintiff, however, notes that it is not relying on general jurisdiction arguments at this time; rather, Plaintiff focuses solely on specific jurisdiction. Therefore, the Court will not address the issue of general jurisdiction.

residents. Only two sales of the contested OpWheel product were ever made to Kentucky residents. One sale occurred in 1999 and the other sale occurred in 2003. However, the 2003 OpWheel sale was made to Plaintiff's attorney, in what Laserland claims is an attempt to fabricate personal jurisdiction. The gross sales of all products Laserland has sold to Kentucky residents have not exceeded $10,000.00 since January 1998. Laserland believes that this amount is *de minimus* and is too small to constitute anything but attenuated, fortuitous, and random contact.

### Defendant's Offer to Sell

Plaintiff Lexmark claims that an offer to sell an infringing product is, by itself, sufficient contact with a forum state to constitute purposeful availment. Patent infringement occurs when anyone "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Plaintiff argues that Laserland's offer to sell the OpWheel product online to potential Kentucky residents satisfies the first prong of the due process inquiry.

Plaintiff points to the case *3D Systems v. Aarotech Laboratories*, 160 F.3d 1373 (Fed.Cir.1998), in which the defendant had sold fewer than five patent-infringing products worldwide and had not sold a single product within the forum state. *3D Systems v. Aarotech Laboratories*, 160 F.3d 1373, 1376 (Fed.Cir.1998). However, the defendant in *3D Systems* did provide twenty-two forum residents with price quotes, brochures, specification sheets, videos, and/or sample parts, and maintained a presence on the Internet through its parent company. The court in *3D Systems* found these actions to constitute an offer to sell, thereby satisfying the first prong of the personal jurisdiction test. *Id.* Plaintiff Lexmark claims that Laserland's website likewise constitutes an offer to sell OpWheel products in Kentucky. Defendant Laserland distinguishes *3D Systems* by

pointing out that *3D Systems* did not involve only an offer to sell on a webpage, rather the offer to sell included letters mailed directly to certain individuals within the forum state. Laserland asserts that it never directly solicited business from individuals in Kentucky.

Plaintiff Lexmark also relies upon *Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869 (E.D.Mo.2000), as proof that a website offering prices for its products constitutes an "offer to sell" and therefore constitutes purposeful availment. In *Biometics*, the defendant sold only two of the allegedly infringing products in the forum state and maintained a website that provided a description of the product and the price for which it could be purchased. In *Biometics*, customers were not even able to purchase the allegedly infringing product directly from the defendant's website. The court nevertheless held that the website created an offer to sell the allegedly infringing product in the forum state, allowing for the exercise of personal jurisdiction over the defendant.

Defendant Laserland believes that its website is more analogous to a national magazine advertisement, which is not purposefully directed at any one state. For instance, in *Intel Corporation v. Silicon Storage Tech., Inc.* 20 F.Supp.2d 690 (D.Del.1998), the Court found that the defendant's placement of advertisements in a national magazine was directed toward a national audience and did not constitute an offer to sell to the forum state. Laserland argues that a webpage does not establish personal jurisdiction without a more direct link to the forum state. In its reply brief, Laserland states that the only evidence that a Kentucky resident visited the website revolves around Lexmark's attorney's visit to the website. This interaction, according to Defendant, constitutes an attempt to fabricate jurisdiction and should not provide a sufficient link to the forum

state. Only one other Kentucky resident ever purchased the OpWheel from Laserland. This occurred in 1999 and the order was placed over the phone rather than directly on the Internet. Therefore, Laserland claims that there is no proof that anyone in Kentucky other than Lexmark's attorney has ever visited the webpage.

Defendant's argument that its Internet site is similar to a national magazine does not persuade the Court. While the two have many similarities in advocating one's products, Laserland's webpage is indeed different. A consumer can purchase Laserland's products directly on Laserland's webpage. In this sense, Laserland's website is a valid offer to sell rather than merely a generalized advertisement. Further, since Laserland actually sold its various products to Kentucky residents, the Court believes that Defendant's website is intended to generate interest in its products in Kentucky.

### Sale of OpWheel in Kentucky

█ Plaintiff Lexmark claims that the two sales of the OpWheel product into Kentucky creates contact sufficient to establish personal jurisdiction.[3] Laserland does admit that the sale of an allegedly patented item within a state may grant that state personal jurisdiction over a defendant. See ESAB Group, 34 F.Supp.2d at 332. However, Laserland argues that a plaintiff cannot unilaterally manufacture jurisdiction by purchasing the product; therefore, Laserland claims the 2003 sale to Lexmark's attorney does not constitute purposeful availment. See DeSantis v. Hafner Creations, Inc., 949 F.Supp. 419,

424–425 (E.D.Va.1996). Further, Laserland believes that the 1999 sale of the OpWheel to a Kentucky resident is alone not enough to assert personal jurisdiction. Laserland claims that this 1999 purchase is insufficient contact with Kentucky since it was a unilateral act by the purchaser, with each party remaining in their respective state.

The Court will exclude the 2003 OpWheel sale from consideration due to Plaintiff's role in that transaction. However, the 1999 sale of the OpWheel to a Kentucky resident does provide Defendant with a commercial benefit. Further, Defendant has sold various other products to Kentucky residents over the past years. The sale of the OpWheel to a Kentucky resident, along with the other facts of this case, allow this Court to find that Defendant did purposefully avail itself of the benefits of doing business in Kentucky.

### Defendant's Webpage

Lexmark argues that Defendant Laserland's website is alone a sufficient contact with Kentucky for the Court to exercise personal jurisdiction. Websites have been classified into three categories for purposes of jurisdictional analysis: (1) passive websites which merely make information available to users; (2) websites where the owner clearly does business over the Internet; and (3) a middle category of interactive websites where the user can exchange information with the host computer. Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996)).

---

**3.** Plaintiff Lexmark notes in its brief that out-of-state sellers are more susceptible to personal jurisdiction than out-of-state buyers. Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc., 562 S.W.2d 99, 100 (Ky.1978) (citing In–Flight Devices Corp. v. VanDusen Air, Inc., 466 F.2d 220 (6th Cir.1972)). Generally this approach appears in cases dealing with tort claims arising from products sold by the defendant into the forum state. This idea is applicable to the infringement claim at hand in that Defendant Laserland made the choice to sell its products to residents in Kentucky and therefore purposefully availed itself of the privileges of doing business in Kentucky.

Passive websites alone do not provide the requisite contacts with a forum state in order to comply with due process. If jurisdiction were based on a defendant's "mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements as they currently exist." *Edberg v. Neogen Corp.,* 17 F.Supp.2d 104, 114–115 (D.Conn.1998). In these situations, Federal Courts seem to make their jurisdictional decisions based upon the amount and nature of commercial activity the defendant engages in over the Internet. *See Zippo* at 1124. In · addressing interactive websites, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Zippo* at 1124.

Lexmark asserts that Laserland had a choice about whether it could be subjected to personal jurisdiction in Kentucky. As in *Zippo,* a corporation can choose to sever its connections with a particular state if it determines that the personal jurisdiction risks are too great. A corporation can choose not to sell its services or products to residents of a particular forum. *Zippo* at 1126–1127. According to Lexmark, Laserland forfeited this choice when it sold its products to Kentucky residents, thereby giving this Court jurisdiction over Laserland. Since Laserland chooses to sell its products over the Internet, Lexmark believes Laserland falls into the second category set forth in *Zippo*—a website where the owner clearly does business over the Internet. A clear commercial link between a defendant and residents of a forum state, such as those falling within this second *Zippo* category, warrants a finding of personal jurisdiction.

Laserland claims that Lexmark has failed to meet the burden of proof neces-

sary to show that its webpage creates sufficient contact with Kentucky. Although Laserland agrees with the three categories of websites set forth in *Zippo,* it does not believe that its website constitutes a highly interactive site. Laserland claims that no commercial transaction directly occurs through its website; rather, potential customers simply place orders to Laserland on its webpage and the submitted information is then processed in Michigan by Laserland employees. This, according to Laserland, allows the company to control to whom it sells its products. Laserland claims that it refused to consummate any sale to Lexmark's attorney since Laserland wanted to avoid the jurisdictional reach of Kentucky. However, Laserland fails to explain why it chose to sell an OpWheel product to a Kentucky resident in 1999. Likewise, Laserland sold other products, advertised on its website, to Kentucky residents. Therefore, this Court believes that Laserland's website does fall within the second *Zippo* category. A clear commercial link exists between Laserland and Kentucky. Laserland had a choice as to whether it could be subjected to jurisdiction in Kentucky. By choosing to sell its products to Kentucky residents, Laserland purposefully availed itself of the privileges of doing business in Kentucky.

### Defendant's Willful Infringement

■ Lexmark asserts that Laserland's willful infringement is alone a sufficient contact with Kentucky for the Court to exercise personal jurisdiction. Plaintiff cites to *Columbia Pictures Television v. Krypton Brod. of Birmingham, Inc.,* 106 F.3d 284 (9th Cir.1997) (*rev'd on other grounds, Feltner v. Columbia Pictures Television, Inc.,* 522 U.S. 993, 118 S.Ct. 556, 139 L.Ed.2d 398 (1997)), in which the Ninth Circuit found that the willful infringement of a copyright alone is sufficient to satisfy the purposeful availment prong. The Court found that the defen-

dant "willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the [forum state]. This fact alone is sufficient to satisfy the 'purposeful availment' 'equirement." *Columbia Pictures* at 289. Although Lexmark correctly quotes this case, the Court declines to find jurisdiction based solely on Defendant's alleged patent infringement. Plaintiff sets forth no evidence regarding Defendant's willfulness. Further, even in the *Columbia Pictures* case, the court did not actually base its finding of personal jurisdiction solely on the willful copyright infringement argument. The Court in *Columbia Pictures* found that the defendant had numerous contract-related contacts with the forum state sufficient to satisfy the purposeful availment requirement.

Although the Court does not find that Plaintiff's willful infringement argument will satisfy the purposeful availment requirement, the other factors lead this Court to find that Defendant Laserland did purposeful avail itself of the privileges of doing business in Kentucky. The combination of Defendant's offers to sell it products, its actual sales into Kentucky, and its interactive website constitute purposeful availment in the due process analysis.

### 2. Arising From Defendant's Contacts

■ Plaintiff Lexmark claims that its patent infringement claim arises from Laserland's sales and offers to sell the accused property to Kentucky residents on its website. Lexmark also claims that it suffers an economic injury in Kentucky due to Laserland's infringement. On the other hand, Defendant Laserland points out that only two sales of the OpWheel were ever made to Kentucky residents. Laserland believes those two sales are *de minimus* and thus cannot give rise to personal jurisdiction. Further, Laserland states that the offer to sell the OpWheel on its webpage was not directed at Kentucky and therefore the cause of action does not arise out of that contact.

■ The "arising out of" requirement "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.'" *Third National Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989) (*quoting Mohasco*, 401 F.2d at 384 n. 27). For this prong, some type of relationship between the cause of action and the defendant's contacts with the forum must exist. *See Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir.2002). This Court finds that Laserland's various contacts with Kentucky produce a substantial connection with Plaintiff's cause of action.

### 3. Reasonableness

■ The final prong of the minimum contact analysis seeks to ensure that the exercise of jurisdiction over a defendant is reasonable. There are various factors to consider under this prong such as the interest of the forum state, the plaintiff's interest in obtaining relief, the burden upon the defendant, the efficient functioning of the judiciary, and furthering the forum state's social policies. *Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 429 (Fed.Cir.1996). Defendant Laserland claims that the burdens placed upon it by litigating in Kentucky outweigh the convenience to Plaintiff and the interest of Kentucky in adjudicating the dispute. This Court is unpersuaded by Defendant's argument. Plaintiff Lexmark has a right to bring suit in any reasonable forum in which it can obtain personal jurisdiction over Defendant. Simply stating that it will be more burdensome for Defen-

dant to litigate in Kentucky than it may be in Michigan does not make Kentucky an unreasonable forum. Further, just because Plaintiff does business in a number of forums does not mean it must choose to bring suit against Defendant in the forum most convenient to Defendant. As for the forum's interest, Kentucky surely has an interest in protecting the patents of its residents. *Zippo* at 1127.

Defendant further claims that this suit was brought by Plaintiff in retaliation for litigation currently pending in Michigan. However, Defendant offers no evidence of this allegation other than simply stating the mere fact that litigation is pending between Plaintiff and Defendant in the Eastern District of Michigan.[4] It appears to be reasonable for a corporation to enforce its patents and, offering no evidence in support of its retaliation theory, Defendant may be subject to personal jurisdiction in Kentucky without transgressing the bounds of due process.

## B. Venue

■ Under Federal patent laws, the venue provision may be found at 28 U.S.C. § 1400(b). This provision states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Federal courts have consistently interpreted this provision to allow for proper venue where the defendant resides or where the defendant is subject to personal jurisdic-

tion. *Real Good Toys, Inc. v. XL Machine L·d.,* 163 F.Supp.2d 421 (D.Vt.2001); *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207 (S.D.N.Y.1995). Since Defendant is subject to personal jurisdiction in Kentucky, the motion to dismiss for improper venue should be denied.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction and improper venue be, and the same hereby is, **DENIED.**

---

4. Defendant also discusses in detail in its reply memorandum its belief that Laserland cannot be held liable as an "infringer" of Lexmark's patents. In this section, Laserland includes various arguments dealing with issues other than jurisdiction and venue. For instance, Laserland believes that Lexmark cannot bring a claim of contributory infringement until there is a finding of direct infringe-

ment. According to Laserland, Lexmark has not produced such proof of direct infringement. This Court declines to comment on such issues, as they do not pertain to Defendant's original motion to dismiss based on personal jurisdiction and venue. See F.R.C.P. 12(f). If Defendant or Plaintiff wishes to address these issues, they may do so upon appropriate motion.