COUNTRY HOME PRODUCTS, INC., Plaintiff,

v.

SCHILLER–PFEIFFER, INC., JEP Management, Inc., Stuart M. Bryan, individually and in his capacity as an officer of Schiller–Pfeiffer, Inc., Jeffrey E. Perelman, individually and in his capacity as an officer of Schiller–Pfeiffer, Inc. Defendants.

No. 2:04–CV–111.

United States District Court, D. Vermont.

Nov. 19, 2004.

Marc B. Heath, Devin McLaughlin, Lawrence C. Agee, Pro se, for Plaintiff.

Richard W. Kozlowski, Craig Weatherly, Janet C. Murnane, Robert F. O'Neill, for Defendant.

## MEMORANDUM AND ORDER

SESSIONS, Chief Judge.

Plaintiff Country Home Products ("CHP") seeks declaratory relief and damages for fraudulent misrepresentation and fraudulent concealment against Defendants Schiller–Pfeiffer ("Schiller"), JEP Management ("JEP"), Stuart M. Bryan and Jeffrey E. Perelman. Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person, Fed. R.Civ.P. 12(b)(3) for improper venue and Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted and in the alternative, move to Transfer the Action to the Eastern District of Pennsylvania (Doc. 12 & 13). CHP opposes the motion to dismiss and the motion to transfer venue. For the reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Amended Complaint and **DENIES** to Transfer the Action to the Eastern District of Pennsylvania.

## BACKGROUND

For the purposes of the motion to dismiss, all facts taken from CHP's amended complaint are assumed to be true and all inferences are drawn in CHP's favor. CHP is a Vermont business producing outdoor products with its principal place of business in Vergennes, Vermont. Schiller and JEP are Pennsylvania corporations with principal places of business in Pennsylvania. Defendant Stuart M. Bryan is a resident of Pennsylvania and President of Schiller. Defendant Jeffrey E. Perelman is also a resident of Pennsylvania and is the Chief Executive Officer of Schiller and President of JEP.

In June 2003, Mr. Perelman and JEP's Chief Financial Officer visited CHP offices in Vermont to discuss Schiller's possible acquisition of CHP. Am. Compl. ¶ 7. Defendants Perelman and Bryan were involved in these negotiations, representing Schiller and JEP respectively. On December 30, 2003, the parties entered into a "non-binding" Letter of Intent ("LOI") and a Confidentiality Agreement to allow the parties to explore the possible acquisition of CHP by Schiller and affiliates. Under the LOI, CHP could not solicit other offers and the LOI "is to be governed and construed in accordance with the laws of Pennsylvania." Am. Compl. ¶ 15. The LOI did not contain provisions relative to jurisdiction and venue. The Confidentiality Agreement contained a forum selection clause that stated the agreement "may be enforced only in federal court having jurisdiction in the state of Vermont and the parties hereby agree that such courts shall have venue and exclusive subject matter jurisdiction." Am. Compl. ¶ 18, Ex. A.

The parties subsequently engaged in due diligence and CHP requested financial

documents from Schiller and JEP. Defendants Bryan and Perelman allegedly delayed providing financial information and subsequently gave misleading sales and profit forecasts for 2004 to CHP. In March 2004, the acquisition began to unravel due to discoveries made during the course of due diligence. CHP became concerned about the financial state of Schiller and JEP and that CHP would be a poor fit with Schiller and JEP. Specifically, CHP's corporate culture fosters a "permissive, libertarian workplace environment," while Schiller maintains a rigid, hierarchal style. Am. Compl. ¶ 31. CHP was also worried that key members of its management team would choose not to accept offers from or remain employed by the acquiring company. Also of concern to CHP was Schiller's plan to close certain Vermont operations that would result in the loss of over 70 jobs in Vermont.

Based on the reasons outline above, CHP terminated the LOI on March 15, 2004, consistent with a provision in the LOI that "either party may terminate this letter by notice delivered to the other." Am. Compl. ¶¶ 16, 34. On March 17, 2004, Schiller and JEP filed a Praecipe for the Writ of Summons[1] in the Court of Common Pleas, Philadelphia County, Pennsylvania against CHP and three of its principals, alleging violation of the LOI by engaging in negotiations with other potential purchasers of the business. Based on complete diversity of citizenship between parties, CHP filed a notice for removal and removed the case to the United States District Court for the Eastern District of Pennsylvania ("Pennsylvania Action"). There are several motions currently pending in the Pennsylvania Action, including

CHP's motion to dismiss or in the alternative transfer venue to Vermont.

On May 11, 2004, CHP filed a complaint in the United States District Court for the District of Vermont seeking declaratory judgment. CHP also brought claims of fraudulent misrepresentation and fraudulent concealment against the Defendants.

### DISCUSSION

I. Motion to Dismiss

A. Rule 12(b)(6)

In order to decide a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.*, 275 F.3d 191, 197–98 (2d Cir.2001). A district court may grant a Rule 12(b)(6) motion to dismiss if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 198 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Therefore, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

CHP seeks a declaratory judgment, requesting the Court to declare that 1) CHP had not breached the Letter of Intent; 2) Defendants were not entitled to any relief, either monetary damages or specific performance under either the LOI or the Confidentiality Agreement; and 3) Defendants must comply with the Confidentiality Agreement by providing the required cer-

---

**1.** Filing a praecipe for writ of summons provides parties with an alternative means to begin a lawsuit under Pennsylvania law.

Schiller and JEP eventually filed a complaint in the Pennsylvania Action on June 30, 2004.

tification under the Confidentiality Agreement for the return of CHP documents. In response, Schiller and JEP, move to dismiss under Rule 12(b)(6), arguing that 1) CHP improperly sought declaratory judgment because the dispute involved past actions; and 2) all of CHP's confidential documents have been returned and there is no case or controversy concerning the Confidentiality Agreement.

In a letter to the Court dated November 2, 2004, CHP indicated that it intends to amend its Complaint by removing its request that the Court order Defendants to comply with the Confidentiality Agreement. Thus, that particular issue is moot and requires no further discussion.

 Section 2201 of the Declaratory Judgment Act ("DJA") provides that any court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201(a). The existence of an actual controversy is necessary to sustain jurisdiction under the Declaratory Judgment Act. *Id.* The Second Circuit must "entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue or (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy, giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir.1992) (quoting *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969)). The court must look at the litigation situation as a whole in determining whether it is appropriate to exercise its jurisdiction over the declaratory judgment action. *Federal Ins. Co. v. May Dept. Stores Co.,* 808 F.Supp. 347, 348 (S.D.N.Y.1992).

 The purpose of the DJA is "to enable parties to adjudicate disputes before either side suffers great damages." *In re Combustion Equip. Assocs.,* 838 F.2d 35,

37 (2d Cir.1988). In *Price v. J & H Marsh & McLennan, Inc.,* No. 2:03–cv–292 (D. Vt. June 8, 2004), this Court recognized that declaratory judgment is inappropriate when past conduct is the focus of the allegation.

The Amended Complaint seeks declaratory judgment that Plaintiff had not breached the LOI and Defendants are not entitled to any monetary relief or specific damages. While the LOI was terminated on March 15, 2004, CHP claims it is presently suffering ongoing damages from the Defendants' current allegations that "continue to cast a dark cloud over CHP's business" (Doc. 14). During the November 4, 2004 hearing before this Court, CHP made statements about the financial damage that it continues to experience from the litigation in the Pennsylvania and Vermont Actions. CHP is stalled in its plans to sell its tangible assets until this dispute is settled. As recognized in the Second Circuit, a declaratory judgment must be entertained when it will afford relief from uncertainty and insecurity. Thus, CHP meets that prong of the test because it faces present and prospective damage.

Defendants argue that CHP's claims against Officers Bryan and Perelman in their individual capacities should be dismissed pursuant to Rule 12(b)(6) because CHP's Amended Complaint failed to allege any wrongful conduct by Defendants Bryan or Perelman in their individual capacity. The Court denies the motion as premature. Defendants may raise this issue again when discovery has been completed.

B. Personal Jurisdiction

 The plaintiff bears the burden of demonstrating contacts with the forum state that are sufficient to give the court

jurisdiction over the person of the defendant in a 12(b)(2) motion. *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, a plaintiff need only make a prima facie showing that jurisdiction exists. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ The Court must initially look to the state long arm statute to decide whether this court has jurisdiction over the Defendants. The Vermont Long Arm Statute Ann. Tit. 12 § 913(b) provides that:

[U]pon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

Vt. Stat. Ann. tit. 12 § 913 (1971). The Vermont Supreme Court's interpretation of this statute permits the assertion of jurisdiction to the "full extent allowed under the Due Process Clause" of the federal constitution. *Northern Aircraft v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382, 1385 (1990). This Court must determine whether the Due Process Clause allows for the exercise of personal jurisdiction over Schiller and JEP based on these facts. *Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.*, 977 F.Supp. 297, 300 (D.Vt. 1997). Due process offers protection to a nonresident defendant from being subject to the binding judgments of a forum with which it has had no significant contacts. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

The due process test has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metro. Life*, 84 F.3d at 567. First, a determination whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction needs to be made. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Defendants have 'minimum contacts' with the forum state for the purposes of specific jurisdiction if the claim arises directly out of their contacts and if they have purposefully availed themselves of the privilege of doing business in the forum." *Real Good Toys, Inc. v. XL Machine Ltd.*, 163 F.Supp.2d 421, 424 (D.Vt.2001) (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174). Based on the minimum contacts with the forum state, the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court held that intentional actions "directed at the plaintiff and having sufficient impact upon it in the forum may give rise to jurisdiction." *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir.1998). "Jurisdiction is appropriate when the state has been the 'focal point both of the [alleged tort] and of the harm suffered,' the defendants knew the plaintiff would suffer the 'brunt' of the harm there, and the 'expressly aimed' their actions at the state." *Real Good Toys, Inc.*, 163 F.Supp.2d at 425 (citing *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997)).

■ "Second, the Court must determine that an assertion of personal jurisdiction does not offend the 'traditional notions of fair play and substantial justice.'" *Tom and Sally's Handmade Chocolates, Inc.*, 977 F.Supp. at 300 (quotation mark and

citation omitted). Courts can consider the following factors: 1) the burden on the defendant; 2) the forum State's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) shared interest of the several States in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 292–94, 100 S.Ct. 559).

■ Upon analysis of these two requirements, the Court possesses specific personal jurisdiction over the defendants. Schiller and JEP engaged in active negotiations with CHP regarding the purchase of assets. Officers from Schiller and JEP, including Mr. Perelman, came to CHP's Vermont office to discuss the acquisition and "purposefully availed" themselves of the opportunity to do business in this forum. During the course of due diligence, Schiller and JEP allegedly engaged in intentional misrepresentation and concealment of financial data to CHP, knowing that the brunt of the harm would be sustained in Vermont. "Calder's effect test has been met, at least preliminarily" with these alleged intentional misrepresentations suffered by CHP in the forum state. *Real Good Toys, Inc.,* 163 F.Supp.2d at 424.

Nor does personal jurisdiction over Schiller and JEP offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. The motion to dismiss for lack of personal jurisdiction is therefore denied.

## C. Venue

■ On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue is proper in that forum falls on the plaintiff. *See United States Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001). It is generally held that venue is proper anywhere there is personal jurisdiction. *Real Good Toys, Inc.,* 163 F.Supp.2d at 425. Defendants' argue that the Amended Complaint must be dismissed under Fed.R.Civ.P. 12(b)(3) because venue is not proper in the United States District Court for the District of Vermont.

■ CHP filed the Vermont Action on the basis that this Court had original jurisdiction and venue pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391(a)(2). Under 28 U.S.C. § 1391, venue is proper in any judicial district in which "a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of the property is situated." Venue may exist in more than one district and the plaintiff is not required to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Kirkpatrick v. The Rays Group,* 71 F.Supp.2d 204, 212 (W.D.N.Y.1999) (citations omitted); *Neufeld v. Neufeld,* 910 F.Supp. 977, 986 (S.D.N.Y.1996).

■ A substantial part of the events giving rise to the claim occurred in Vermont. CHP's place of business is located in Vergennes, Vermont. Venue is proper anywhere there is personal jurisdiction and the Court has already established that personal jurisdiction over the Defendants exist.

Schiller and JEP make several arguments about improper venue which the Court will address briefly. According to Schiller and JEP, venue is improper because CHP's reference to the venue provi-

sion of the Confidentiality Agreement is moot. The Court recognizes the choice of venue provision in the Confidentiality Agreement provides only limited guidance of the parties' intent about jurisdiction and venue. However, venue is still proper in Vermont because this forum has personal jurisdiction over the Defendants.

 Schiller and JEP also contend that there is no reason for the Vermont Action to duplicate or supercede the Pennsylvania action. "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation." *James v. AT & T Corp.*, 334 F.Supp.2d 410, 411 (S.D.N.Y.2004) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). A suit is viewed as duplicative if the claims, parties, and available relief do not differ significantly between the two actions. *Id.* In the Pennsylvania Action, Schiller and JEP bring breach of contract, fraud and promissory estoppel claims against CHP. Compl., *Schiller–Pfeiffer, Inc and JEP Management, Inc. v. Country Home Products Inc., and Joseph M. Perrotto and Richard P. Alther and William M. Lockwood, Jr.*, No. 04–cv–1444 (E.D. Pa. June 30, 2004). The Vermont Action involves different claims, including declaratory judgment, fraudulent misrepresentation and fraudulent concealment. The claims in the suits are not the same, therefore the action is not necessarily duplicative.

Finally, Defendants claim that the first-filed rule should apply because CHP has not demonstrated any special circumstances. This analysis under the first-filed rule requires consideration of the same factors relevant to stay a "second-filed" action on a motion to transfer under 28 U.S.C. § 1404(a). *Kellen Co., Inc. v. Cal-*

*phalon Corp.*, 54 F.Supp.2d 218, 221 (S.D.N.Y.1999). Accordingly, the Court will consider the first-filed rule analysis for the motion to dismiss for improper venue and the motion to transfer venue together.

## II. Motion to Transfer Venue

 On motion to transfer venue, the burden is on defendant, when it is the moving party, to establish that there should be change of forum. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). A district court may transfer any civil action to any other district where it may have been brought for the "convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. The district court is vested with discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). Defendants move to transfer this action to the United States District Court for the Eastern District of Pennsylvania.

 "[T]he general rule in this [the Second] Circuit is that, as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,'" *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir.1951); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir.1965), *cert. denied*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966). Special circumstances can also justify giving priority to the second filed suit.[2] *William*

---

**2.** Special circumstances include customer action, where the first-filed suit is against a

customer of the alleged infringer while the second suit involves the infringer himself. *Id.*

*Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969). It is well-established that the balancing of convenience "should be left to the sound discretion of the district courts." *Id.* Generally, there is a strong presumption in favor of the forum of the first-filed suit, the action in which the complaint was filed first. *See New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991). "The first-filed rule is not to be applied mechanically, but is intended to aid judicial administration." *Kellen Co., Inc.*, 54 F.Supp.2d at 221.

▮ This Court recognizes that the praecipe for a writ of summons filed on March 17, 2004 in the Court of Common Pleas of Philadelphia County, Pennsylvania is an adequate means of commencing suit. "Where a case originates in a state court, as this Pennsylvania lawsuit did, but is later removed to a federal court, the state rule controls the question of commencement." *Med–Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962, 968 (N.D.Iowa 1999). State law in Pennsylvania allows a civil suit to commenced by filing either of two documents: (1) a praecipe for a writ of summons; or (2) a complaint. Pa. R. Civ. P. 1007. Thus, the Pennsylvania Action is the first-filed suit and the suit in the Vermont Action was filed second, on May 11, 2004.

▮ The first-filed rule carves out exceptions where there is a showing of the balance of convenience, that can tilt favor to the second-filed suit. Balancing factors of convenience is an equitable task, affording a wide degree of discretion to district courts in determining a suitable forum. *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989) (citation omitted). In considering the De-

fendants' motions to dismiss for improper venue and to transfer venue, it is necessary to examine the balance of convenience factors. The factors include: "(1) convenience of parties; (2) convenience of witnesses; (3) relative means of parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) desirability of having the case tried by forum familiar with substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on assessment of the totality of material circumstances." *Stewart Org.*, 487 U.S. at 29–30, 108 S.Ct. 2239.

▮ Based on an evaluation of the factors, the Court finds compelling reasons why this forum is the proper venue and why the balance of convenience does not favor transfer to the United States District Court for the Eastern District of Pennsylvania. A quick resolution of this matter will benefit all parties. Due to the modest caseload, this Court can address the case expeditiously. Although Defendants filed a praecipe for a writ of summons in Pennsylvania, they failed to follow up with a complaint for three months, after Plaintiff had filed a complaint in Vermont.

The state of Vermont may have a unique and legitimate stake in outcome of the case. The location of the business at issue is in the state of Vermont. Much of the negotiation for the LOI took place in Vermont. Many of the witnesses are residents of Vermont. Much of the documentation is located in Vermont. The impact on the local Vermont economy, and particularly the town of Vergennes could be substantial. "Vermont has an important in-

The second example of a special circumstance is where forum shopping alone motivated the choice of venue for the first suit. *Id.* There are no special circumstances present in this case.

terest in protecting its ... business interests." *Real Good Toys, Inc.,* 163 F.Supp.2d at 426. "[A] small, family owned, corporation, has a strong interest in obtaining relief in its homestate." *Id.* Locally owned Vermont companies, like CHP, have a different type of corporate culture and approach to business. Moreover, courts in Vermont may be better able to weigh evidence regarding Vermont business corporate culture. Public policy favors Vermont as the appropriate forum. These factors weigh heavily against transfer of venue to Pennsylvania.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Amended Complaint and **DENIES** to Transfer the Action to the Eastern District of Pennsylvania.